# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1858.

## W. H. MAYFIELD v. C. C. COTTON.

In order that an executory agreement, to the effect that a note which the one holds against the other, shall be discharged in a particular manner, as in certain articles at a certain price, shall operate as a satisfaction of the note, it is essential that the new agreement should be founded upon a new consideration ; for example, that it should be mutually binding, upon the debtor to deliver and upon the creditor to receive ; or if not thus mutual, but left optional with the debtor, that the latter tender performance according to the terms of the creditor's offer, before the offer is withdrawn.

Where a creditor offers to receive payment of his debt in certain property at a certain price, and the debtor tenders the property accordingly, which is refused by the creditor, and the debtor retains the property and disposes of it as his own, it is not a satisfaction of the debt.

In view of the evidence that the defendant was in the act of making a transfer and disposition of a considerable amount of property, in a manner apparently out of the ordinary course of dealing, and considering that the ground on which the attachment was sued out, was that the defendant was about to transfer his property in fraud of his creditors, whereby the plaintiff would probably lose his debt, the Court very properly charged the jury, in reference to the defendant's claim in reconvention for damages, that they might

consider the evidence of the defendant's reputation for solvency and ability to pay his debts, in determining upon the motive by which the plaintiff was actuated in suing out the attachment.

Where the defendant in attachment (a merchant) claims damages for injury to his credit, by the wrongful suing out of the attachment, evidence, offered by the plaintiff in attachment, to the effect that the defendant was reputed insolvent at the time, is legitimate to determine whether the latter has sustained any and what injury in his credit and standing as a merchant, by the suing out of the attachment.

Appeal from Karnes. Tried below before the Hon. Edmund J. Davis.

Suit by appellee against appellant, commenced July 20th, 1857, on the promissory note of the defendant, for $2,572 30, dated Feb. 21st, 1857, and payable to plaintiff on or before the first of May. On the 22d of September, plaintiff filed an affidavit for attachment, stating that the defendant was then about to transfer his property for the purpose of defrauding his creditors, and that thereby the plaintiff would probably lose his debt. Attachment issued and levied on goods, wares and merchandize of defendant, in his store-house, valued at $2,500 ; six days afterwards, property replevied by defendant. Answer that in March, 1857, plaintiff and defendant entered into a contract to the effect that defendant should pay said note in beeves, three year olds at $12 per head, and four year olds at $13 per head, to be delivered to plaintiff as they should be demanded on twenty days notice, at defendant's farm on the Ecleto in said county ; that after notice as aforesaid, at different times, on demand of plaintiff, defendant tendered to him thirty-one three year olds and twenty-six four year olds, of which plaintiff only accepted three of the former and seven of the latter; that defendant turned the rest out as the property of plaintiff ; and always was and still is ready to deliver the balance in payment of said note upon receipt of the notice as aforesaid, which said plaintiff has never given, except for the number herein before mentioned as tendered, in pursuance of notice, to plaintiff by this defendant. Wherefore defendant,

alleged said note was paid. Defendant also pleaded in recon-
vention, that the attachment had been wrongfully and mali-
ciously obtained, and claimed damages in the sum of $5,000.

The evidence as to contract to receive beeves in payment,
was to the effect that plaintiff had agreed to receive, on said
note, two hundred beeves, half three year olds and half four
year olds, to be such as a beef buyer by the name of Foster,
then purchasing beeves in that vicinity, would receive from
plaintiff at the same price, to-wit : $12 per head for three year
olds, and $13 per head for four year olds ; that out of the
number offered by defendant as alleged in the answer, Foster
accepted ten, three three year olds and seven four year olds,
and that the balance of the beeves which had been offered
were turned out with a piece sawed off one horn of each ; but
defendant afterwards sold them to others.

The evidence as to the ground for suing out the attachment
was to the effect that defendant had considerable property,
some of which was not paid for, some of it mortgaged ; that
he was a good deal involved in debt ; that some persons con-
sidered him insolvent, and others thought he would pay out ;
that there was a good deal of talk on the subject, much of
which occurred at the plaintiff's store, the latter expressing
the opinion that defendant was insolvent ; that plaintiff and
defendant had been partners in merchandizing at Helena, the
county seat of Karnes county, and that the note in suit was
given for the plaintiff's interest, the defendant assuming to
pay the debts, which were about $8,000 ; that plaintiff imme-
diately started a grocery store in same place, and soon after-
wards commenced writing letters to the creditors of the firm
at New Orleans, manifesting great anxiety lest by failure to
get their claims secured immediately, he, the plaintiff, should
be finally compelled to pay them ; that defendant had paid the
debts, and he exhibited plaintiff's letters, which had been for-
warded to defendant by the creditors to whom they were writ-
ten ; that when the affidavit for attachment was filed, defendant

was about to sell say $1,600 worth of merchandise, out of a stock of say $3,000 worth, to McAdo & Uzzel, who resided in another county, and the goods were being boxed up at the time ; that defendant's store was closed six days, defendant at first saying he could not replevy the goods ; and a witness estimated the damage therefrom at $15 per day ; there was no proof that defendant had suffered in his credit or standing by reason of the attachment.

The Court instructed the jury, without request, as follows :

1st. This is a suit upon a note. The plaintiff sued out an attachment and levied upon certain property of defendant to recover his debt, under the provisions of the 4th Section of the Act of March 11th, 1848, as amended by the Act of July 24th, 1856. The defendant pleads in reconvention a contract to furnish beeves in payment of the note, and damages for wrongfully and maliciously suing out the attachment.

2d. The proof given as to the contract for the beef is such as will only warrant you in finding the value of those taken by Foster for Cotton, and deducting them from the note.

3d. As to question of damages for suing out the attachment, unless it is proved to you that some one or other of the circumstances specified in the law as necessary to exist, and on which the issuance of the attachment is to be based, did in fact exist, then the defendant is at any rate entitled to the actual damages he sustained in his credit, and in the closing up of his business, by the levy of the attachment. This damage, and the question of existence of the facts required by law, you must ascertain from the evidence given you.

4th. On the question of punitory or vindictive damages, you will find first whether the circumstances did or did not as aforesaid exist, authorising the issuance of the attachment. If they did not exist, then will arise the question of plaintiff having acted maliciously. If you find such malice on the part of plaintiff in suing out this writ, you may add to the amount of actual damage as defined in third charge other damages by

way of punishment to the amount, but not beyond five thousand dollars. To arrive at a conclusion on the point of malice, the jury will consider as well the evidence given of reputation of ownership, by the defendant, of property beyond his liabilities, as his reputation for solvency.

5th. Should you not find that defendant has been damaged by the suing out of the writ as defined in third and fourth charges, then you will find for plaintiff amount of note, with interest from date at 10 per cent., less the amount of the value of aforesaid ten beeves. Should you find damages for defendant, you will specify them in your verdict and deduct same from total due plaintiff, or give verdict for defendant should such damages go beyond note with interest.

The defendant requested the following instructions, the first of which was given and the others refused :

1st. The amount of exemplary damages to be assessed by the jury must depend upon the motives of the plaintiff ; if it was intended to injure the defendant, the plaintiff is responsible in exemplary damages.

2d. Whether the attachment was properly issued or not, the plaintiff is responsible for damages consequent upon suing out such attachment.

3d. If plaintiff had means of knowing that defendant was solvent upon inquiry, he would not be authorised, on general reputation to the contrary, to issue an attachment.

4th. If the jury find that the attachment was issued maliciously, they may find exemplary damages in any amount not exceeding five thousand dollars.

Verdict and judgment for plaintiff for the amount of the note and interest, less the price of the ten beeves. Motion for new trial overruled, &c.

*J. A. Ware*, for appellant.

*L. S. Lawhon*, for appellee.

WHEELER, J.   A person, holding a claim upon another, may agree to receive a new promise or undertaking of his debtor, when executed, as a satisfaction.   Whether it shall have, by itself, the effect of satisfying the original claim, must be determined by the construction of the new agreement.   Generally, if the new promise be founded upon the new consideration, and is clearly binding on the original promisor, it is a satisfaction of the former claim ; otherwise it is not.   If the new promise be executory, and be not upon a new and sufficient consideration, it is no satisfaction until it is executed, or at least until performance is tendered by the promisor, according to its terms.   If it be for the performance of some collateral act, as the delivery of property, and performance be tendered and not accepted, and the promisor afterwards retains the property in his possession and disposes of it as his own, thereby affirming the property to continue in himself, unaffected by the tender, it is no satisfaction.   (Bradshaw v. Davis, 12 Tex. R. 336 ; 2 Parsons on Con., 193 to 200.)

The new agreement relied on in the present case, as an accord and satisfaction, was not upon any new consideration ; it cannot be said that performance of it was ever tendered ; but if tendered, the promisor appears afterwards to have disposed of and treated the property as his own.   It manifestly was no satisfaction of the plaintiff's demand..   Upon the whole evidence, it is to be deduced, that the plaintiff was desirous to obtain payment of his debt; that an opportunity was afforded of selling beeves ; and that the agreement of the plaintiff was, to receive from the defendant beeves in satisfaction of his debt, which should be such as a person, then in the neighborhood purchasing beeves, would receive from the plaintiff.   The beeves were wanted by the plaintiff, it seems, for a particular purpose and disposition known to the defendant ; and he was bound to furnish such as would answer the purpose intended ; otherwise the plaintiff was not bound by his agreement to receive them.   Of those produced by the defendant, only ten

(of the two hundred which were to have been delivered) were such as would answer the purpose for which they were designed. For these, the defendant received credit in the judgment ; and that was all he was legally or equitably entitled to claim.

In view of the evidence that the defendant was in the act of making a transfer and disposition of a considerable amount of property, in a manner apparently out of the ordinary course of dealing, and considering that the ground on which the attachment was sued out, was that the defendant was about to transfer his property in fraud of his creditors, whereby the plaintiff would probably lose his debt, the Court very properly charged the jury, in reference to the defendant's claim in reconvention for damages, that they might consider the evidence of the defendant's reputation for solvency and ability to pay his debts, in determining upon the motive by which the plaintiff was actuated in suing out the attachment. It was also legitimate to determine whether he had sustained any and what injury in his credit and standing as a merchant, by reason of the suing out of the attachment.

There was no error in refusing the 2d, 3d and 4th charges aided by the defendant. The first of these was manifestly incorrect in point of law ; the second was abstract, and not warranted by the evidence ; and the last had been embraced substantially in the general charge. We are of opinion that the verdict was well warranted by the evidence, and that there is no error in the judgment. It is therefore affirmed.

Judgment affirmed.